IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ALVIN L. KENDALL,

    Plaintiff,

      v.

THAXTON ROAD LLC, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:09-CV-3520-TWT

## ORDER

This is an action under the Clean Water Act.  It is before the Court on the Defendants Thaxton Road, LLC and Hathaway Construction Company, Inc.'s Motion for Summary Judgment or Alternative Motion for Partial Summary Judgment [Doc. 204] and the Plaintiff's Motion for Partial Summary Judgment [Doc. 211].  For the reasons set forth below, Defendants Thaxton Road, LLC and Hathaway Construction Company, Inc.'s Motion for Summary Judgment or Alternative Motion for Partial Summary Judgment [Doc. 204] is DENIED and the Plaintiff's Motion for Partial Summary Judgment [Doc. 211] is DENIED.

## I.  Background

Plaintiff Alvin Kendall brought suit against Defendants Thaxton Road, LLC ("Thaxton"), Hathaway Construction Company, Inc. ("Hathaway"), and Elite

Engineering, P.C. ("Elite"), pursuant to the Clean Water Act, 33 U.S.C. §§ 1251-1376 (the "CWA").  The Plaintiff also brought state law claims for trespass, nuisance, negligence, negligence per se, punitive damages, injunctive relief, and legal fees.

Kendall alleges that the Defendants' development, Bedford Estates, damaged the property at 3810 Thaxton Road, Atlanta, Fulton County, Georgia (the "Kendall Property"), which is occupied by the Plaintiff and located south of Bedford Estates. The Defendants initially submitted the plans for Bedford Estates to the Fulton County Department of Environmental and Community Development in March 2006.  In July 2006, Fulton County issued Thaxton and Hathaway a land disturbance permit.  In 2009, the Defendants sent Notices of Intent for Coverage Under the National Pollutant Discharge Elimination System ("NDPES") General Permit to Discharge Storm Water Associated With Construction Activity as a Primary Permittee to the Georgia Department of Natural Resources, Environmental Protection Division ("EPD"), and subsequently made revisions to the notices pursuant to the EPD's instructions.

Kendall began complaining to the Defendants and to Fulton County in January 2007 about storm water runoff, mud, sedimentation, and debris flowing from Bedford Estates to the Kendall Property and then to a feeder creek ultimately leading to the Chattahoochee River.  Apparently in response to Kendall's complaints concerning the development's runoff, the Magistrate Court of Fulton County, Georgia, issued eight

environmental citations to Thaxton and to David Hathaway, respectively, on June 17, 2009.[1]   The court directed Thaxton and Hathaway to fund an engineering analysis of Bedford Estates through Fulton County's engineering inspection program.   The Defendants hired United Consulting Company to inspect the Kendall Property.   On July 30, 2009, United Consulting Company engineers accompanied Kendall in an examination of the Kendall Property.   United Consulting ultimately released two reports largely concluding that runoff from Bedford Estates did not damage the Kendall Property's basement and did not cause any erosion.   (See Waters Aff. Exs. 3 and 4).   The Plaintiff contends that United Consulting was not an independent engineering firm and that the inspection was largely a farce. (See Pl.'s Resp. to Defs.' Mot. for Summ. J., at 7-8).   After the inspections, there were hearings in Fulton County in which the Plaintiff participated.   After Thaxton entered  *nolo contendre* pleas coupled with notations of compliance, the Magistrate Court fined Thaxton $3,000, determined that the development was in compliance, and closed the case along with all outstanding environmental citations.   (See Hathaway Aff. Exs. 2 and 5).

------

[1]Specifically, David Hathaway, a member of Defendant Thaxton, was issued Environmental Citations numbered 8334, 8336-1, 8338-1, 8340-1, 8342, 8344, 8346, and 8348.  Thaxton Road, LLC, was issued Environmental Citations numbered 8335-1, 8337-1, 8339-1, 8341-1, 8343, 8345, 8347, and 8349.  (See Hathaway Aff. Exs. 1 and 2).

Separately, in April 2010, the EPD and Thaxton entered into a consent order concerning the Bedford Estates development (the "Consent Order"). (See Hathaway Aff. Ex. 6). Thaxton paid a fine of $7500 but did not admit violations and the EPD did not waive further enforcement action. (Id.) The Consent Order required Thaxton to "immediately stop all Construction Activity at the Project other than the installation and maintenance of Best Management Practices for Erosion Control until authorized in writing by the EPD to resume." (Id. at 7). Thaxton and Hathaway sent the EPD Notices of Termination as to the Bedford Estates Subdivision and the Bedford Estates Phase 2 on July 9, 2009, and August 9, 2010, respectively. (Second Hathaway Aff. Ex. 2). Apparently, no further development of the property has occurred.

Kendall notified the Defendants of his intent to sue on June 17, 2009, and filed the instant suit on December 15, 2009. The complaint included claims against Thaxton, Hathaway, Elite Engineering, Atlantic Southern Bank, Flag Bank, Bobby Smith, and Dick Wilcox. This Court dismissed the Plaintiff's complaint without prejudice after a hearing on September 16, 2010. [Doc. 141]. On September 7, 2011, the Eleventh Circuit affirmed the dismissal of the claims against Defendants Atlantic Southern Bank, Flag Bank, Bobby Smith, and Dick Wilcox but remanded the Plaintiff's claims against Thaxton, Elite, and Hathaway. [Doc. 167]. Defendants Thaxton and Hathaway have filed a motion for summary judgment or in the

alternative partial summary judgment and the Plaintiff has filed a motion for partial

summary judgment.  These motions are the subject of this Order.

## II.  Motion for Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and

affidavits submitted by the parties show that no genuine issue of material fact exists

and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The court should view the evidence and any inferences that may be drawn in the light

most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59

(1970).  The party seeking summary judgment must first identify grounds that show

the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S.

317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond

the pleadings and present affirmative evidence to show that a genuine issue of material

fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III.  Discussion

### A.  The Defendants' Motion for Summary Judgment

The Defendants argue that the Plaintiff's citizen suit under the CWA is

precluded because Fulton County, Georgia, has diligently prosecuted the claims

against the Defendants under Georgia laws, because the State remedial action has

resulted in substantial compliance, and because Georgia's statutory scheme is substantially comparable to the CWA.  The Defendants further argue that the Plaintiff has not shown his alleged damages were caused by the Defendants because the report from United Consulting shows that Bedford Estates did not cause the runoff to the Kendall Property.  (See Defs.' Mot. for Summ J. or Partial Summ. J., generally).

The Plaintiff counters that the action taken by Fulton County does not preclude a citizen suit because Georgia's statutory scheme is not comparable to the CWA.  The Plaintiff further argues that rainfall consistently leads to water damage to the Kendall Property and that the Defendants cannot rely on a three-year old engineering report to disprove causation.  The Plaintiff also contends that United Consulting, the firm that conducted the assessment, had done all of the preliminary engineering for Bedford Estates and was therefore conflicted.  The Plaintiff claims that the engineer who conducted the study only briefly visited the Kendall Property and did not perform any tests or ask the Plaintiff any questions.  (See Pl.'s Resp. in Opp. to Defs.' Mot. for Summ. J. or Partial Summ. J., generally).

"The CWA generally authorizes a citizen to commence a civil action in federal court against any person who is alleged to be in violation of an effluent standard or limitation."  McAbee v. City of Fort Payne, 318 F.3d 1248, 1251 (11th Cir. 2003).

Citizen suits, however, are subject to the Act's limitations on actions.  See 33 U.S.C.

§ 1319(g)(6)(A).  These limitations are as follows:

> [A]ny violation ... (ii) with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection, or (iii) for which the Administrator, the Secretary, or the State has issued a final  order not subject to further judicial review and the violator has paid a penalty assessed under this subsection, or such comparable State law, as the case may be, shall not be the subject of a civil penalty action...

33 U.S.C. § 1319(g)(6)(A).  A further limitation is contained in section 1365(b)(1)(B),

which states that "[n]o action may be commenced [under the section on citizen suits]

if the Administrator or State has commenced and is diligently prosecuting a civil or

criminal action in a court of the United States, or a State to require compliance with

the  standard,  limitation,  or  order..."   33  U.S.C.  §  1365(b)(1)(B).  The  Defendants

contend that each of these provisions provides a separate ground for dismissing this

action.

### 1.    33 U.S.C. §§ 1319(g)(6)(A)(ii) and (iii)

The Defendants entered into a Consent Order with the Georgia Environmental

Protection Division settling claims for violation of Georgia law.  The Defendants

argue that this precludes a citizen action suit.  The limitations of   33 U.S.C. §§

1319(g)(6)(A)(ii) and (iii) require that the State take action pursuant to a state

statutory regime sufficiently comparable to the CWA.  In McAbee v. City of Fort

Payne, 318 F.3d 1248 (11th Cir.  2003), the Eleventh Circuit laid out the "comparability" analysis for determining if a state statutory regime is sufficiently similar to the CWA regime to warrant precluding a citizen suit.  The court noted that the text of the act requires courts to compare three classes of provisions from the state and federal regimes: the penalty-assessment provisions, the public-participation provisions, and the judicial-review provisions.  Id. at 1255.  The court instructed that "for state law to be 'comparable,' each class of state-law provisions must be roughly comparable to the corresponding class of federal provisions."  Id.  The court ultimately concluded that Alabama's public-participation provisions were more limited than the analogous federal provisions and thus insufficiently comparable to the federal scheme.  Accordingly, the court held that the actions taken by Alabama did not preclude a citizen suit under the CWA.  Id. at 1257.

In Leakey v. Corridor Materials, LLC, 839 F. Supp. 2d 1340 (M.D. Ga. 2012), the defendants argued that Georgia enforcement actions, including entering into a consent order and issuing fines, precluded the plaintiff's suit under the CWA.  The defendants contended that the governing Georgia statutes were comparable to the federal scheme.  The court applied the standard from McAbee to the Georgia scheme and concluded the state and federal laws were not roughly comparable.  Comparing the public participation provisions, the court noted that the CWA grants "interested

persons" the right to public notice, an opportunity to comment, the right to present evidence upon a hearing, and the right to seek a hearing.  Id.  Conversely, the court noted, the Georgia Water Quality Control Act ("GWQCA") only grants participation rights to members of the public who are adversely affected by an action or order.  Id. (citing O.C.G.A. § 12-5-43(a)).  The court also noted that there is nothing in the GWQCA providing for public notice or an opportunity to comment.  Id.  The Leakey court further concluded that the Georgia Administrative Procedure Act, Open Meetings Act, and Open Records Act, along with a regulation associated with the EPD, do not provide opportunities for participation comparable with the CWA.  Id. at 1348-49 and n.7 (citing O.C.G.A. §§ 50-13-2(2), 50-14-1, 50-18-70; Ga. Comp. R. & Regs. § 391-1-3-01(2)).  The court concluded that the "Georgia statutes do not contain analogous public participation provisions."  Id. at 1348.

The Defendants do not ask this Court to make a holding contrary to the one in Leakey.  Rather, the Defendants argue that the facts of this case show that the Plaintiff was provided with ample opportunity for public participation during the hearings on the citations issued by Fulton County.  They argue that "[t]he public participation requirements have been met by Plaintiff's actual appearance and testimony in Court to state his case and his participation in the Court ordered inspection by United Consulting of the property in question."  (Defs.' Reply in Supp. of Defs.' Mot. for

Summ. J., at 7).  However, the Defendants do not identify any caselaw suggesting that the comparability analysis should be an analysis of actual participation.  The analyses in both McAbee and Leakey focused on the statutes themselves.[2]   The fact that the Plaintiff has had ample participation in the Fulton County proceedings in this suit simply does not change the fact that the Georgia and federal statutory schemes have different public participation provisions.

While the Defendants cite out of circuit cases counseling against the overindulgence of citizen suits, the Defendants have not demonstrated that a factual policy analysis is appropriate for determining rough comparability.  Accordingly, because the public participation provisions of the CWA are not comparable to the relevant Georgia regimes, the Defendants cannot utilize 33 U.S.C. §§ 1319(g)(6)(A)(ii) or (iii) to preclude a citizen suit.  See Leakey, 839 F. Supp. 2d at 1348.

2.    33 U.S.C. § 1365(b)(1)(B)

_____

[2]The language in Leakey is instructive.  The court in that case explained that the defendants did not argue that "the [plaintiff] or the public generally had any 'interests' at stake that would have allowed intervention."  Leakey, 839 F. Supp. 2d at 1349.  The court also stated that the defendants did not explain how a party like the plaintiffs had "the right, or even the opportunity, to intervene."  Id.  The references to the "public" or "a party like the plaintiff" indicate that the comparability analysis should focus on public participation generally, not the participation allowed in a specific case. See McAbee, 318 F.3d at 1256-57 (applying the comparability standard without discussing the facts of the case before the court).

The Defendants also argue that 33 U.S.C. § 1365(b)(1)(B) prohibits the citizen suit here.  That section provides that "[n]o action may be commenced [under the section on citizen suits] if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order..."   33 U.S.C. § 1365(b)(1)(B).  The Defendants argue that the enforcement actions taken by Fulton County suffice to satisfy this statute.  The Defendants specifically argue that Fulton County is a "State" within the Clean Water Act definition.

In <u>New Manchester Resort & Golf, LLC v. Douglasville Dev., LLC</u>, 734 F. Supp. 2d 1326 (N.D. Ga. 2010), the defendants argued that the actions taken by the Douglasville-Douglas County WSA constituted the actions of a State capable of satisfying 33 U.S.C. § 1365(b)(1)(B).  The court disagreed and noted that "[t]he Clean Water Act defines 'State' as 'a State, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, American Samoa, the Commonwealth of the Northern Mariana Islands, and the Trust Territory of the Pacific Islands.'"   <u>New Manchester</u>, 734 F. Supp. 2d at 1340 (quoting 33 U.S.C. § 1362(3)).  Further, the court noted, the CWA defines "'municipality' as a 'city, town, borough, county, parish, district, association, or other public body created by or pursuant to State law and having jurisdiction over disposal of sewage, industrial wastes, or other wastes.'"

Id. (quoting 33 U.S.C. § 1362(3)).  The court concluded that the Douglasville-Douglas County WSA was not a State as defined by the CWA.  Id.

Here, the Defendants argue that in Georgia "counties" are "local, legal, political subdivisions of the state, created out of its territory, and are arms of the state, created, organized and existing for civil and political purposes."  (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 10-11); Troup County Electric Membership Corp. v. Georgia Power Co., 229 Ga. 348, 352 (1972).  The Defendants do not explain how a "county" could be considered a "state" under the CWA when counties are specifically defined as municipalities and not states.  See 33 U.S.C. § 1362(3).  Indeed, the Defendants' proffered definition of a Georgia county corresponds with the Clean Water Act's definition of a municipality in that both definitions say that the State creates the county.  Further, the Defendants have not provided a single case where a county was considered a State for the purposes of the CWA.  But see Ohio Public Interest Research Group v. Laidlaw Envtl. Servs., 963 F. Supp. 635, 639 (S.D. Ohio 1996) (holding that the civil action by two cities in Ohio was not an enforcement action by a State); Illinois Public Interest Research Group v. PMC, Inc., 835 F. Supp. 1070, 1074 (N.D. Ill. 1993) ("Several decisions in fact conclude that action by a local governmental body is not action by a 'State,' within the meaning of the [CWA]."); New York Public Interest Research Group v. Limco Mfg. Corp., 697 F. Supp. 608,

610-611 (E.D.N.Y. 1987) ("To permit a municipality or any state agency not specifically authorized to bring an action to enforce the Act's standards to substitute for the Administrator and the State would seriously impair the role that Congress designed for citizens."). Accordingly, Fulton County is not a State for the purposes of the CWA.

The Defendants also argue that the actions of the Georgia EPD suffice to satisfy section 1365(b)(1)(B) and preclude the citizen suit here. The EPD entered into a Consent Order with Thaxton on April 16, 2010. (See Hathaway Aff. Ex. 6). Assuming the EPD is a State under the CWA definition and assuming that the Consent Order constitutes diligent prosecution, the action of the EPD still cannot satisfy section 1365(b)(1)(B) because there is no indication in the facts that the EPD commenced an action in court. As no civil or criminal action has been filed by the EPD against any Defendant in a court, section 1365(b)(1)(B) does not preclude the citizen suit here. See Black Warrior Riverkeeper, Inc. v. Birmingham Airport Auth., 561 F. Supp. 2d 1250, 1254 (N.D. Ala. 2008) (concluding that § 1365(b)(1)(B) did not bar the citizen suit because the state environmental agency had not filed a civil or criminal action in a court).

Because the Defendants have not shown that 33 U.S.C. §§ 1319(g)(6)(A)(ii) or (iii) or 1365(b)(1)(B) should preclude the Plaintiff's citizen suit, the Defendants' motion for summary judgment should be denied in that respect.

3.   Causation

The Defendants separately argue that summary judgment is appropriate because the Plaintiff cannot prove that the Bedford Estates development caused damage to the Kendall Property.  The Defendants argue that the two engineering reports done by United Consulting in 2009 establish that water from Bedford Estates did not damage the Kendall Property.  The Plaintiff argues that he seeks ongoing damages to his property because soil erosion, excess water, and sedimentation damage his property every time it rains and that an over three year-old engineering report cannot establish what the damages are today.  The Plaintiff contends United Consulting was conflicted and never engaged in serious testing of the Kendall Property.

Importantly, the Plaintiff has provided evidence undermining the Defendants' contentions.  The Plaintiff has offered an email sent by the Fulton County lead engineer, Dick Wilcox, after the United Consulting inspection, stating that Defendant Elite Engineering had not properly provided a downstream capacity analysis.  (Pl.'s Resp. in Opp. to Defs.' Mot. for Summ. J., Ex. F)  Elite responded that a complete downstream analysis would require more studies, including taking field surveys of

each area.  (Id. Ex. G).  Further, Elite stated that water from Pond B – the water that

the Plaintiff complains flows onto the Kendall Property – does not directly flow to a

creek but rather becomes a "shallow concentrate flow on the adjacent properties to the

south."  (Id.)

This evidence, combined with the narrow scope of the United Consulting

reports, is sufficient to create an issue of fact with respect to causation.  The first

United Consulting report's conclusion was limited to water damage in the basement:

> From our examination, United Consulting's opinion is that it does not
> appear that runoff from the Bedford Estates site was the cause of the
> water infiltration into the basement.  Review of the basement did not
> identify any structural damage.  We do not believe that there is a
> structural problem in this area of the house that could have been caused
> by the reported leak.

(Waters Aff. Ex. 3, at 2).  In other words, the engineering firm opined that water in the

Kendall Property basement did not cause any structural damage and did not appear to

have come from the Bedford Estates site.  The second report stated:

> From our examination, United Consulting believes that runoff from the
> Bedford Estates site has not caused erosion damage of any significance,
> if any at all.  The water flows gently to the bottom area with the sewage
> right-of-way.  Some of the fill associated with the burial of the sewage
> piping may have settled, but that is not due to water from adjacent
> construction.

(Waters Aff. Ex. 4, at 2).  Again, this report only states that United Consulting did not

believe there was erosion damage from Bedford Estates runoff in 2009.  However,

even assuming these reports are sufficiently probative, the Plaintiff is seeking damages for more than just erosion damage and structural damage to his basement. In his deposition, the Plaintiff noted he had replaced several lawnmowers due to the presence of water and that water had damaged his personal property. (See Kendall Dep. at 47-55). United Consulting's reports are not broad enough to establish that the water that damaged the Plaintiff's lawnmowers did not come from the Bedford Estates site. Indeed, the first report recognized that runoff from Bedford Estates "appears to flow to the west and east around the residential structure." (Waters Aff. Ex. 3, at 2).[3] Finally, the letter from Elite Engineering stating that water flows from Pond B and settles on the adjacent properties undermines any contention the Defendants can make that the United Consulting reports establish that no harmful water came from Bedford Estates.

---

[3]The deposition of Timothy Beck, who participated in United Consulting's inspection of the Kendall Property, shows how uncertain the scope of the United Consulting reports is. For instance, Beck states his understanding was that United Consulting was only investigating water running into the basement of the Kendall Property. (See Beck Dep. at 8-9). But then Beck later states that United Consulting was also investigating the drainage "around the house." (See id. at 9-11). And later Beck confirms that he observed the water flowing from the detention pond at Bedford Estates and into the creek. (See id. at 18-20). This statement is directly contrary to the report from Elite Engineering stating that water from Pond B of Bedford Estates does not enter a creek but rather becomes a "shallow concentrate flow on the adjacent properties to the south." (Pl.'s Resp. in Opp. to Defs.' Mot. for Summ. J., Ex. G).

The Defendants argue that these facts are analogous to the facts in <u>Walls v.</u> <u>Moreland Altobelli Assocs.</u>, 290 Ga. App. 199 (2008), where the court affirmed a directed verdict in favor of the defendants with respect to causation.  The plaintiff there had filed tort claims arguing he was injured by standing water and improper draining following the development of adjacent property.  The court affirmed the directed verdict because the plaintiff had provided no evidence that the defendant's project caused the water problem and because the plaintiff's wife testified she did not know when the water problem started and who caused it.  Further, the defendant provided evidence that its construction activities had sloped and graded the area for proper drainage.  The defendant further showed that both a utility company and the county had completed projects after the defendant's project that altered the grade of the drainage system.  <u>See</u> <u>id.</u> at 200-01.

Here, in contrast, the Plaintiff has provided evidence that at some point the downstream analysis related to the Bedford Estates development was incomplete along with evidence from Defendant Elite Engineering stating that the water flow toward the Kendall Property could be problematic.  Indeed, the statement from Elite Engineering directly contradicts the deposition testimony of Timothy Beck, who participated in the United Consulting inspection, and undermines United Consulting's conclusions concerning the water flow from Pond B at Bedford Estates.  This

evidence is more than the total lack of evidence provided by the plaintiff in <u>Walls</u>. Additionally, the Defendants here, unlike in <u>Walls</u>, have not shown that other activities unrelated to Bedford Estates have led to drainage issues on the Kendall Property.   Accordingly, the Plaintiff has shown there is a genuine issue of material fact with respect to the cause of the damages he is seeking, and summary judgment should be denied in that respect.

B.  <u>The Plaintiff's Motion for Partial Summary Judgment</u>

In his motion for partial summary judgment, the Plaintiff argues there is no issue of material fact with respect to his claims for violations of the CWA, nuisance, trespass, negligence, negligence per se, and for injunctive relief.   The Plaintiff contends that the Defendants admitted in their briefs that the Fulton County and State of Georgia Environment Protection Department ("EPD") actions remedied CWA violations and that this admission suffices to establish liability with respect to the CWA counts.   Likewise, the Plaintiff argues that the Defendants have admitted to polluting the Kendall Property with mud, sedimentation, cellar dirt, garbage, and excessive water thereby establishing liability for nuisance, trespass, negligence, and negligence per se.   (<u>See</u> Pl.'s Mot. for Partial Summ. J., generally).

The Defendants in turn argue that there has been no admission or adjudication that they have violated the CWA or any related state law or ordinance.   Indeed, the

Defendants argue, the Fulton County court ruled that Thaxton was in compliance with relevant laws and closed the case on April 20, 2010.  Likewise, when Thaxton entered into the Consent Order with the Georgia EPD it did not admit to any violations.  The Defendants further argue that their *nolo contendere* pleas to the Magistrate Court and any related statements are inadmissible.  (See Defs.' Resp. to Pl.'s Mot. for Partial Summ. J., generally).

Even assuming the documents and statements the Plaintiff points to as conceding that the Defendants violated the CWA and caused the water damage are admissible, they do not establish the Defendants' liability.  The Plaintiff argues that the Defendants' statements in their briefs that Georgia's enforcement actions for CWA and related violations preclude a citizen suit indicates that the Defendants have conceded liability.  However, the statements the Plaintiff refers to simply do not indicate that the Defendants have conceded liability.  For instance, the Plaintiff contends the statement in the Defendants' Motion for Summary Judgment that Fulton County has "taken substantial action in a Court which resulted in remedial action of the claimed violations" is a concession of liability.  (See Pl.'s Mot. for Partial Summ. J., at 19).  The Defendants' statement only recognizes that Fulton County itself had alleged violations.  Indeed, the statement appears to be crafted precisely to avoid admitting to the alleged violations.  Likewise, the Plaintiff argues that the Defendants'

remedial actions in response to the environmental citations issued by Fulton County were admissions of liability.  The Plaintiff offers no details as to how the Defendants' response to state issued environmental citations engenders an admission to violating a wholly different federal statute.

The Plaintiff also points to the Consent Order that Thaxton entered into with the EPD as an admission of liability.  This contention cannot stand in the face of the express language of the Consent Order which states:

> This Order is executed and entered into solely for the purpose of resolving and disposing of the allegations set forth herein and does not constitute a finding, adjudication, or evidence of a violation of any law, rule, or regulation by Respondent [Thaxton], and, by consenting to this Order, Respondent does not admit to any factual allegation contained herein or to any violations of State laws.  In addition, this Order is not intended to create and it shall not be construed or otherwise deemed to recognize or create any claim, right, liability, estoppel, or waiver of rights in favor of any third-party or parties.

(Hathaway Aff. Ex. 6, at 8).  Overall, the Plaintiff's arguments as to the Defendants' admissions of liability are unconvincing.   Accordingly, the Plaintiff has not established that the Defendants have admitted to CWA violations or have admitted liability with respect to the state law claims.  Summary judgment should therefore be denied.

IV.  Conclusion

For the reasons set forth above, Defendants Thaxton Road, LLC and Hathaway Construction Company, Inc.'s Motion for Summary Judgment or Alternative Motion for Partial Summary Judgment [Doc. 204] is DENIED and the Plaintiff's Motion for Partial Summary Judgment [Doc. 211] is DENIED.

SO ORDERED, this 18 day of January, 2013.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge